MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2013 ME 13
Docket:        Yor-12-10
Argued:        October 23, 2012
Decided:       January 29, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR,
               JJ.

ESTATE OF PATRICK P. SMITH

v.

CUMBERLAND COUNTY et al.

ALEXANDER, J.

[¶1]  The Estate of Patrick P. Smith appeals from a summary judgment of the Superior Court (York County, *Fritzsche, J.*) in favor of Cumberland County and Andrew Feeney on the Estate's complaint for negligence.  The Estate challenges the trial court's conclusion that the County and Feeney were entitled to discretionary function immunity pursuant to the Maine Tort Claims Act, 14 M.R.S. §§ 8104-B(3), 8111(1)(C) (2012), precluding liability for damages arising out of a motorcycle accident following a high-speed chase.  Because the summary judgment record does not contain any evidence to support a finding that the defendants' actions were a cause of Patrick Smith losing control of his motorcycle, we affirm the judgment.

## I. CASE HISTORY

[¶2] The following facts are derived from the parties' statements of material facts and are viewed in the light most favorable to the Estate as the nonprevailing party.[1] *See Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 2, 45 A.3d 722.

[¶3] On July 12, 2008, Andrew Feeney, a Cumberland County Sheriff's Deputy, was on duty patrolling in the Town of Standish. Feeney observed a motorcycle traveling at forty-seven miles per hour in a thirty-mile-per-hour zone. Based on this observation, Feeney turned around to follow the motorcycle, initially lost sight of it, sighted it again, and approached the motorcycle as it traveled along Route 25. Feeney activated his blue emergency lights to initiate a traffic stop. The motorcycle did not stop and continued to travel on Route 25. Although Feeney did not know it at the time, Smith did not have a certificate authorizing him to operate the motorcycle on a public way, *see* 29-A M.R.S. § 1252(2), (7) (2012), and the motorcycle's registration had been expired for nearly a year, *see* 29-A M.R.S. § 351(1)(B) (2012).

---

[1] We commend the parties for their summary judgment practice. The court was able to focus on the legal issues in dispute because both parties followed the letter and spirit of M.R. Civ. P. 56 through their willingness to admit, for purposes of resolving the summary judgment motion only, facts outside of the core area of dispute. *Cf. Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 27 n.10, 45 A.3d 722.

[¶4]  Feeney followed the motorcycle as it turned onto Cape Road.  Once on Cape Road, the motorcycle rapidly accelerated to a very high speed.  Feeney pursued the motorcycle, reaching speeds exceeding ninety miles per hour, without catching the fleeing motorcycle.  Once the pursuit began, there is no dispute that the operator of the motorcycle was committing the crimes of failure to stop for an officer, 29-A M.R.S. § 2414(2) (2012); eluding an officer, 29-A M.R.S. § 2414(3) (2012); criminal speeding by exceeding the maximum rate of speed by thirty miles per hour or more, 29-A M.R.S. § 2074(3) (2012); and driving to endanger, 29-A M.R.S. § 2413(1) (2012).  At times during the pursuit, the motorcycle crossed the centerline and traveled in the oncoming traffic lane.  Feeney saw the motorcycle cross the intersection of Cape Road and Route 35 and continue onto Warren Road.

[¶5]  The parties dispute what happened next.  According to Feeney, because he slowed at the intersections, he lost sight of the motorcycle after it turned a corner.  After Feeney turned the corner, he saw that the motorcycle was off the pavement on its side and that Smith was lying on the ground approximately twenty-seven feet from the motorcycle.  Feeney asserts that his cruiser did not make contact with the motorcycle, but he admits that he radioed dispatch using an erroneous code number that indicated that his cruiser was involved in a collision.  The Estate cites the code number given in this radio transmission as evidence that

4

there is a disputed issue of fact as to whether Feeney's vehicle made contact with the motorcycle. The parties agree, however, that there is no physical evidence that the cruiser made contact with the motorcycle.

[¶6] Once stopped at the scene, Feeney administered first aid to Smith. Smith was taken to the hospital, where he died of blunt force head trauma a few days later. Smith's injuries were consistent with falling off a motorcycle and striking his head on a roadway or hard ground.

[¶7] The parties dispute whether or not Feeney knew the identity of the person he was chasing before the crash occurred. The parties agree that other deputies who patrolled the Standish area knew Smith. Although other deputies may have known Smith, there is no evidence that, before initiating his effort to stop the motorcycle, Feeney recognized Smith as the operator. There is no evidence that Feeney conveyed any personal identity or registration number information to the dispatcher as he pursued the motorcycle.

[¶8] Feeney's supervisor, Sergeant David Hall, reconstructed the crash. In Hall's opinion, Smith was unable to negotiate a turn. Smith traveled across the centerline and into oncoming traffic. The tires of Smith's motorcycle skidded for ninety-six feet. The motorcycle rolled, and Smith was separated from it. Hall determined that the cause of the accident was not speed and that Smith's blood alcohol content was 0.17%, over twice the legal limit of 0.08%, *see* 29-A M.R.S.

§ 2411(1-A)(A)(2) (2012). For purposes of the summary judgment motion, the Estate admitted that Hall found that Smith's speed as he rounded the corner did not cause him to crash.

[¶9] Hall concluded that the cause of the accident was more likely than not Smith's impairment, but the parties disagree as to whether that conclusion was correct. The Estate, however, does not cite any authority or any alternative expert theory of causation for the crash.

[¶10] The Cumberland County Sherriff's Office had a written policy regarding high-speed chases that governed Feeney's conduct. The policy states that a "[d]eputy shall not pursue vehicles for minor traffic violations." Thus, Feeney's observation that Smith's vehicle was traveling at forty-seven miles per hour in a thirty-mile-per-hour zone was not, by itself, justification for a high-speed chase pursuant to the policy.[2] The policy also states: "The department expects a deputy to end his/her involvement in pursuit whenever the risks to his/her own safety, or the safety of others, outweigh[] the danger to the community if the suspect is not apprehended."

---

[2] The parties dispute the extent of Feeney's basis for chasing Smith, but at most, Feeney initiated pursuit of Smith because of Smith's civil violation of speeding, and did so before Smith's rapid acceleration to high speeds.

6

[¶11]  The Estate sued Cumberland County, former Sheriff Mark Dion,[3] and Andrew Feeney for negligence.[4]  Cumberland County and Feeney moved for a summary judgment, which the Superior Court granted, and the Estate appealed.

## II.  LEGAL ANALYSIS

A.    Discretionary Function Immunity

[¶12]  The Estate argues that the Superior Court erred in granting a summary judgment based on discretionary function immunity, 14 M.R.S. §§ 8104-B(3) (governmental entity immunity), 8111(1)(C) (governmental employee immunity). Summary judgment may be entered when a defendant is immune from tort liability.  *Roberts v. State*, 1999 ME 89, ¶ 6, 731 A.2d 855.  We review the entry of a summary judgment de novo.  *Id.*

[¶13]  Following our decision in *Norton v. Hall*, 2003 ME 118, ¶¶ 6-16, 834 A.2d 928, which applied the discretionary function immunity provisions of the Maine Tort Claims Act in the context of an accident occurring in the course of a deputy's high-speed response to a call, the Legislature amended the Act, *see* P.L. 2005, ch. 448, § 1 (codified at 14 M.R.S. § 8104-B(3)).  The amendment removed immunity from a "governmental entity for an employee's negligent operation of the motor vehicle resulting in a collision, regardless of whether the

---

[3]  The Estate dismissed its case aguins Dion after the trial management conference.

[4]  Dion and Feeney were named in their individual and official capacities.

employee has immunity." 14 M.R.S. § 8104-B(3).[5] The Legislature did not amend 14 M.R.S. § 8111(1)(C) to limit discretionary function immunity for individual officers exercising discretion in deciding whether to pursue a fleeing vehicle. If, however, the officer operates the vehicle negligently, the government entity, here the County, may be liable for damages.

[¶14] The revision of section 8104-B(3) may be ambiguous as to whether it applies in a case of alleged negligent driving when a party has been injured, although there has been no "collision" or contact between a government vehicle and the injured party or the injured party's vehicle. We need not resolve that issue today, however, because, assuming that a negligence standard would apply, there is no dispute in this record that the essential causation element of the Estate's negligence claim is missing.

---

[5] Title 14 M.R.S. § 8104-B (2012) provides, in relevant part:

> Notwithstanding section 8104-A, a governmental entity is not liable for any claim which results from:
>
> . . . .
>
> **3. Performing discretionary function.** Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid, except that if the discretionary function involves the operation of a motor vehicle, as defined in Title 29-A, section 101, subsection 42, this section does not provide immunity for the governmental entity for an employee's negligent operation of the motor vehicle resulting in a collision, regardless of whether the employee has immunity under this chapter.
>
> . . . .

B.      Motor Vehicle Negligence

[¶15]  The Estate argues that the Superior Court erred in granting a summary judgment because disputed issues of material fact as to Feeney's alleged negligence preclude judgment as a matter of law.  We review the grant of a summary judgment de novo and view the evidence in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact and whether the prevailing party was entitled to judgment as a matter of law. *Morgan v. Marquis*, 2012 ME 106, ¶ 6, 50 A.3d 1.

[¶16]  A cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury.  *See McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 8, 43 A.3d 948; *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951.

[¶17]  The existence of a duty is a legal question, and there can be no dispute that motorists owe a duty of care to others on the roads in Maine.  *See Crowe v. Shaw*, 2000 ME 136, ¶¶ 7-11, 755 A.2d 509.  Whether a person breached his or her duty of care is a question of fact.  *Stanton v. Univ. of Maine Sys.*, 2001 ME 96, ¶ 11, 773 A.2d 1045.  The presence of injury or damage is similarly a question of fact.  *See Foss v. Ingeneri*, 561 A.2d 498, 499 (Me. 1989).  Causation is also a question of fact, requiring proof that there is some reasonable causal connection

demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered. *McIlroy*, 2012 ME 59, ¶ 8, 43 A.3d 948; *Crowe*, 2000 ME 136, ¶¶ 9-11, 755 A.2d 509.

[¶18] Because the record before us is devoid of facts that could support a finding of causation, we focus on that element here. Causation in almost all vehicle accident cases will be a matter for the fact-finder and will not be resolvable on summary judgment. However, the fact-finder's role in resolving claims of negligence does not exempt a negligence action from summary judgment scrutiny, as a cause of action wholly unsupported by the evidence may always be decided as a question of law. *See Crowe*, 2000 ME 136, ¶¶ 7-11, 755 A.2d 509 (affirming a summary judgment on lack of causation when there was evidence of operator error).

[¶19] In order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim. In other words, evidence of factual elements offered to prove a claimed tort, submitted in opposition to summary judgment, need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating. *See Addy v. Jenkins, Inc.*, 2009 ME 46, ¶¶ 10-15, 969 A.2d 935 (affirming a summary judgment because a jury could not find proximate causation without "speculation or conjecture"); *Quirion v. Geroux*,

2008 ME 41, ¶ 11, 942 A.2d 670 (affirming a summary judgment when there was no evidence that the defendant breached his duty of care or that any breach was the cause of the plaintiff's injuries); *Mastriano*, 2001 ME 134, ¶¶ 10-21, 779 A.2d 951 (affirming a summary judgment that a cab driver, after leaving a person at that person's vehicle, was not liable for the person's later fatal operation of that vehicle); *see also Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding, in a 42 U.S.C.S. § 1983 (LexisNexis 2002) action, that a summary judgment should have been granted to the law enforcement defendants on a damages claim brought by the fleeing driver in a high-speed chase case, with the police actions judged by an "objectively reasonable" standard).

[¶20] The only evidence of causation in the summary judgment record comes from the evidence of Smith's fall from the motorcycle, a reference number used in a radio call, and Sergeant Hall's reconstruction of the crash. The Estate presented no evidence that Feeney's vehicle was near Smith's motorcycle when the crash occurred, and in fact, the evidence presented is to the contrary. Although the Estate relies on the radio transmission by the officer that indicated, by reference to a specific number, the existence of a collision, the Estate presents no record fact to dispute the County's factual assertion that the reference number was used in error. Nor does the Estate dispute that Feeney and Smith were no longer in proximity to each other when Smith lost control of the motorcycle. Moreover, the Estate

admitted that Feeney rounded a curve and then saw that the motorcycle had crashed. The Estate also admitted that there was no physical evidence of a collision between Feeney and Smith.

[¶21] In his reconstruction of the accident, Hall concluded that speed did not cause Smith to lose control and crash. Hall further concluded that Smith's impairment was the cause of the crash. In responding to the motion for summary judgment, the Estate admitted that Hall found that speed did not cause the accident, but it denied that impairment was the cause of the accident. Even if there is a factual dispute concerning whether Smith's impairment caused the crash, such a dispute does not relate to a material issue of fact regarding whether Feeney's actions caused Smith to crash. *See Morgan*, 2012 ME 106, ¶ 6, 50 A.3d 1; *Crowe*, 2000 ME 136, ¶¶ 9-11, 755 A.2d 509. Smith's intoxication as a possible cause of the crash is not material because it does not have "the potential to affect the outcome of the suit." *See Morgan*, 2012 ME 106, ¶ 6, 50 A.3d 1. Whether or not Smith's intoxication was a cause of the crash, the record is simply devoid of any evidence that Feeney's actions caused Smith to crash. Even if Feeney caused Smith to speed, the Estate has produced no evidence that could support a jury's finding that speed was a cause of the crash. Absent evidence of a causal connection between Feeney's actions and Smith's crash, the Estate cannot maintain its claim of negligence.

[¶22]   Although we reach our conclusion for reasons different from those indicated by the Superior Court when it relied on discretionary function immunity, entry of summary judgment may be affirmed when we determine, as a matter of law, that there is another valid basis for the judgment.  *See Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 16, 983 A.2d 382; *Bracale v. Gibbs*, 2007 ME 7, ¶ 12, 914 A.2d 1112.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Harry B. Center, II, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant Estate of Patrick Smith

Peter T. Marchesi, Esq., and Cassandra S. Shaffer, Esq., Wheeler & Arey, P.A., Waterville, for appellees Cumberland County and Andrew Feeney

**At oral argument:**

Harry B. Center, II, Esq., for appellant Estate of Patrick Smith

Peter T. Marchesi, Esq., for appellees Cumberland County and Andrew Feeney