STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  Docket No. CV-16-025

STATE OF MAINE
Cumberland, ss, Clerk's Office

FEB 03 2017

RECEIVED

SHAWSHAN COSTANTIN,

            Plaintiff

v.                                                JUDGMENT

MARWAH FADEL,

            Defendant


Jury-waived trial on plaintiff's complaint was held on January 4, 2017. Plaintiff appeared

with her attorney. Defendant did not appear; her attorney did appear and stated he was unable to

contact his client. Defendant's sister, Hind Fadhil, testified at trial that defendant was in Iraq on

the day of the trial. No further explanation about defendant's absence was offered and no motion

to continue was filed or made orally at trial.

Plaintiff seeks damages for past medical expenses, past and future pain and suffering,

emotional distress, loss of enjoyment of life, and permanent injury. For the following reasons,

judgment is entered in favor of plaintiff and against defendant.

Facts

Plaintiff and defendant are friends. Plaintiff lives in South Portland and defendant lives

with her parents in Portland. Defendant visits plaintiff and sometimes stays with her.

On June 1, 2013, plaintiff, then 41, was a passenger in the front passenger seat of an

Infinity motor vehicle operated by defendant. The two were en route to Chicago from Portland

for a vacation and a visit with plaintiff's family. Plaintiff was wearing a seat belt and was asleep

at the time the motor vehicle collided with a deer near Buffalo.

1

The motor vehicle was traveling 67 or 68 miles per hour in a 65 mile per hour zone. According to defendant's signed, authenticated statement and her deposition testimony, defendant saw a deer standing in the road at least one hundred feet from defendant's position. She believed the deer would run away so she continued driving and did not slow down. When she realized the deer was not moving, she slammed on her brakes but hit the deer with significant impact. Ten seconds elapsed from her first sight of the deer until impact. (Pl.'s Ex. 1; Pl.'s Ex. 7 6, 8, 10, 13-14.) The headlights and the entire front section of the car were damaged. Contrary to the advice of the police, defendant continued driving the car to Chicago, where it was repaired.

Plaintiff awakened at impact and heard defendant screaming. Plaintiff's back hit the car door. Defendant saw plaintiff's whole body moving and bouncing to the front and back. (Pl.'s Ex. 7 15.) Defendant called the police and the two waited in the car for the police to arrive, approximately ten minutes later.

Defendant apologized to plaintiff. Defendant stated she was unable to do anything in the ten seconds between when she saw the deer and the impact. Plaintiff was fearful and in pain as a result of the accident. Plaintiff was tired and in slight pain when they reached Chicago but the pain worsened. She did nothing while in Chicago. She did not seek medical attention in Chicago because she receives free care in Portland and that was not available in Chicago. The parties shortened their trip and returned to Portland.

During the return trip, plaintiff had back pain and did not feel well. Her family members had given her pain medicine. Many stops were made on the trip home. She sought treatment a day or two after her return to Portland. She had back and leg pain with the back pain identified as a nine on a scale of one to ten with ten being the most severe pain.

2

Plaintiff was seen at Maine Medical Center on June 18, 2013 and several times thereafter. She complained of low back pain and was prescribed medicine. (Pl.'s Ex. 3.) She had two physical therapy sessions. (Pl.'s Ex. 3.) An MRI on November 20, 2013 revealed noncompressive disc bulge at L4-5. (Pl.'s Ex. 4.) She last saw Dr. Binnette at Orthopedic Associates on May 22, 2015. (Pl.'s Ex. 5.) He prescribed medicine, which did not help with the pain. She was advised that nicotine has been shown to age discs of the lumbar spine prematurely and was advised to cease use of nicotine products. (Pl.'s Ex. 5.) She continues to smoke and is not interested in stopping. She has not seen a doctor since May 2015 because the treatment did not help and she could not afford the expenses.

Since the accident of 2013, plaintiff is always tired. She used to run, work out, and play volleyball; she no longer engages in these activities. (Cf. Pl.'s Ex. 5 1.) She cannot sleep for more than five hours and sleeps in a sitting position. The pain and inability to exercise has made plaintiff sad and upset.

Plaintiff has not had a day with no back pain since the accident. On the day of trial, she identified her pain as a seven, which is the least pain she has had in her back and leg since the accident. The back pain consistently expands to her leg as well. Her pain increases if she lies down, sits down, or walks for too long a period.

In 2011, plaintiff fell down at work and had back pain, which resolved after a few days. (Pl.'s Ex. 6 1.) She suffered back pain and a shoulder injury as a result of a previous car accident in 2012. She was prescribed pain medicine and attended physical therapy for her shoulder. Plaintiff recalled she had no leg pain and very slight intermittent back pain before the accident, although the Maine Medical Center records show she was diagnosed with disc problems with radiculopathy. (Pl.'s Ex. 6 1.) Dr. Lawrence Leonard questioned this diagnosis. Plaintiff agreed

3

she had back pain in 2011 and 2012. (Pl.'s Ex. 6 1.) The back pain resulting from the 2012 accident decreased and resolved, although the shoulder pain persisted. Plaintiff never sought treatment for lower back pain until after the traumatic injury to her back in 2013. She had no back pain when she left Portland for Chicago in June 2013.

When she first arrived in America, plaintiff worked as a house painter and farmer, physical work she could not now perform. She currently works as a personal care worker for United Health Care, as she did before the accident, because she needs a job. She previously was able to buy groceries, lift things, and walk with patients for a period of time but can no longer do those things. She is no longer able to perform housework and fixes little food at home because grocery shopping is difficult.

She is not as strong as she once was and feels she cannot do anything. This reality, her pain, and the knowledge that this situation is permanent have caused her to become very sad and depressed. Based on 2013 data, the life expectancy of a 45-year-old female resident of the United States of America is 37.73 years. (Pl.'s Ex. 8.)

Hind Fadhil, defendant's sister, has known plaintiff for six years. Before the 2013 accident, Ms. Fadhil saw plaintiff two times per week. They would hang out, laugh, and have fun. Plaintiff was a strong person. Since this accident, Ms. Fadhil sees plaintiff every other day or daily. Ms. Fadhil described a significant difference in plaintiff's activities before and after the accident. Before, plaintiff was active and exercised with no complaints of pain. Since, plaintiff is not able to exercise or perform household chores, including cleaning and shoveling. She says she is in pain and often is crying. Ms. Fadhil, another sister, and her mother help plaintiff do things she no longer can do.

4

On August 3, 2015, plaintiff's counsel requested that Dr. Lawrence Leonard, M.D. evaluate plaintiff. (Pl.'s Ex. 6-A.) He did so and prepared a report dated August 25, 2015. (Pl.'s Ex. 6.) Dr. Leonard is a graduate of Harvard Medical School, is Board certified in orthopedic surgery, and is a Diplomate of the American Board of Orthopedic Surgery.

As his report and testimony reveal, he diagnosed plaintiff with lumbar syndrome or a problem with her lower back. The result is chronic pain syndrome. Dr. Leonard differs with Dr. Binnette, who did not diagnose chronic pain syndrome on May 22, 2015. Chronic pain becomes worse and causes depression, including crying spells, and sleep disturbance. Plaintiff did not inform her doctor about these psychological problems. She did not like her doctor and wanted to find a different doctor. Dr. Leonard agreed that a patient with an interpreter is a difficult patient to evaluate and cultural issues may affect a female patient's desire to discuss psychological issues with her doctor.

Dr. Leonard concluded that plaintiff did not have symptoms associated with chronic pain syndrome before the 2013 accident. Her chronic pain syndrome and severe low back pain were caused by the 2013 accident. Her lower back pain problems prior to the 2013 accident were intermittent. Dr. Leonard reviewed the November 20, 2013 MRI and determined there was no nerve root compression and no radiculopathy.

Dr. Leonard found no reason to conclude plaintiff was faking her symptoms. His physical examination of plaintiff corroborated her complaint of lower back pain. He was clearly able to feel muscle spasm in the lower lumbar spine upon examination.

Chronic pain differs from acute pain, which, with limited exceptions, resolves quickly. Chronic pain can destroy the patient. Dr. Leonard observed plaintiff as looking depressed during his exam. She reported having crying jags two or three times per week starting three or four

5

months after the accident. She has had these difficulties for three years since the 2013 accident and more likely than not will have them for the remainder of her life.

Plaintiff has not failed to participate in treatment offered in Maine that would have helped her chronic pain syndrome resulting from the 2013 accident. Under an ideal situation, the chronic pain syndrome can improve with a multidisciplinary clinic involving doctors with different specialties treating the patient. A program of physical therapy, by itself, is not helpful. Although there are competent chronic pain doctors available, all encompassing treatment at such a clinic is not available in Maine. Accordingly, plaintiff's prognosis for full or significant recovery is poor.

Plaintiff's medical expenses resulting from the 2013 accident total $3,710.00. The parties stipulated the expenses are fair and reasonable and accurately reflected on the exhibit summary. (Pl.'s Ex. 2.) The court took judicial notice that a motor vehicle traveling at 65 miles per hour will travel 88 feet per second.

Conclusions

Plaintiff must prove: "(1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." Estate of Smith v. Cumberland Cnty., 2013 ME 13, ¶ 16, 60 A.3d 759. Defendant owed a duty to plaintiff and others on the road. Defendant breached that duty by failing to take appropriate action in the available time to avoid colliding with the deer. Her breach caused the car accident, which was a proximate cause of plaintiff's severe low back pain and chronic pain syndrome.

A "person who is injured has a duty to exercise reasonable care to reduce the extent of the injuries and to take reasonable and prudent steps to effect a cure or reduce the severity of the

injury." <u>Walter v. Wal-Mart Stores, Inc.</u>, 2000 ME 63, ¶ 28, 748 A.2d 961. Dr. Binette informed plaintiff of the risks of nicotine and advised her to stop using nicotine. She has not acted on his advice. An injured person who describes her pain as seven to ten on a one to ten scale has a duty and every incentive to take this reasonable step to reduce the severity of her injury.

An adverse inference may be drawn from a party's choice not to appear at trial. <u>See</u> <u>Owen v. Healy</u>, 2006 ME 57, ¶ 9, 896 A.2d 965. Defendant's unexplained absence from trial is "highly relevant and probative evidence." <u>Twin Island Dev. Corp. v. Winchester</u>, 512 A.2d 319, 326 (Me. 1986).

The court concludes that $75,000.00 is fair compensation to the plaintiff for the injuries she sustained as a result of defendant's negligence.

The entry is

> Judgment is entered in favor of Plaintiff Shawshan Costantin and against Defendant Marwah Fadel on Plaintiff's Complaint in the amount of $75,000.00 plus prejudgment interest at the rate of 3.65%, post-judgment interest at the rate of 6.87%, plus costs.

Date: February 3, 2017

Nancy Mills
Justice, Superior Court

7