STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    Docket No.: CV-2016-370

DIANE CHURCHILL,                    )
                                    )
                Plaintiff,          )
                                    )
                                    )                    ORDER
        v.                          )
                                    )          STATE OF MAINE
                                    )          Cumberland, ss, Clerk's Office
PARAGON COMMERCIAL REAL             )
ESTATE, LLC, and DEBRA              )               JUN 3 0 2017
NAPOLITANO                          )                 9:5cam
                Defendants          )               RECEIVED

Plaintiff and Defendants have respectively filed motions for summary judgment on Counts

I (breach of contract), II (anticipatory breach of contract), and IV (unpaid wages upon cessation

of employment, 26 M.R.S. § 626) of her complaint.[1]  For the reasons contained herein, Plaintiff's

motion for summary judgment is denied.  Defendants' motion for summary judgment is granted.

### *Facts*

As the parties conceded at oral argument, the material facts are undisputed and

uncomplicated.  Churchill was employed by Paragon from June 2010 through September 29, 2-

16 as an office manager.

The terms of her employment initially were contained in a letter dated May 12, 2010.  It

became apparent to Churchill that her employment with Paragon was tenuous insofar as

Paragon's president, Debra Napolitano, and CFO Drew Swenson, believed that the declining

business health of Paragon would invariably lead to its imminent shuttering.  Napolitano stated

as much on April 18th and gave Churchill her "two week notice."  Swenson then extended the

notice of termination, confronted with the reality that it would take longer than two weeks to

---

[1] Plaintiff's attorney agrees to dismiss Count III of the complaint, and it is hereby dismissed.  Plaintiff's counsel also agrees that
accrued vacation time is not a compensable damage under any of the causes of action asserted by him.

**Plaintiff–Stephean Chute, Esq.**
**Defendant–Graydon Stevens, Esq.**

wind down Paragon's business. The oral notice of termination was rescinded on May 5th which resulted in an employment contract for a definite term of March 31, 2016 to March 31, 2017. The contract provided an annual salary of $45,000 and benefits in keeping with the earlier letter agreement. Churchill's last day of employment was September 29, 2016 and she claims that she was involuntarily terminated. Paragon concedes only for the purpose of its motion for summary judgment that it breached the employment contract by involuntarily terminating her employment. Churchill was unemployed for approximately one week, after which she accepted a similar employment position with Malone Commercial Brokers with the same salary and identical benefits.

## *Discussion*

### I.     STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). When a defendant moves for summary judgment, the plaintiff must respond with evidence establishing a prima facie case for each element of their cause of action. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (internal citation and quotation marks omitted). The evidence proffered by the plaintiff "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759. If a plaintiff fails to present sufficient evidence on the essential elements, then the defendant is entitled to a summary judgment. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

## II. Breach of Contract and Anticipatory Breach of Contract

The dispute turns on the following operative language of the employment contract:

"the Term of this Agreement shall be from March 31st, 2016 (the effective date) to March 31, 2017, the (termination date). The provision of the Term of this Agreement is integral to the consideration of the Agreement and may not be abridged or modified without the written mutual agreement of the parties. The Term and Compensation provisions of the Agreement shall not be subject to revocation or modification unless due to impracticability or impossibility of performance caused or occasioned by Churchill.

Churchill urges the court to conclude that this is a "no cut" contract or a severance agreement or to alternatively look at evidence extrinsic to the four corners of the contract to divine its intent in a manner consistent with her position.

When interpreting a contract, the court looks first to the language used to give effect to its plain meaning. Only if the court determines that the contract is ambiguous, that is, reasonably susceptible to more than one interpretation under the circumstances, may the court look to extrinsic evidence in order to determine the intent of the parties. *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383 (Me. 1983). The question of whether a contract is ambiguous is a question of law for the court. Interpretation of an ambiguous contract is a question for the fact finder. *Id.*

The court concludes that the operative contract language is not ambiguous. Churchill argues that the fortuity that she mitigated her damages should not diminish what she perceives as her right to recover the full amount that would have been paid to her had she completed her term of employment under the contract. Churchill argues that she shouldn't be burdened by a duty to mitigate. The common law obligation of a non-breaching party to an employment contract to mitigate her damages is not suspended unless the contract contains specific language to that end. This contract contains no such language and, to the contrary, the plain language belies any such conclusion.

The language is fairly standard boilerplate, not unique to employment contracts, emphasizing that its term and compensation provisions may not be modified or abridged without the written consent of the parties or unless impossibility or impracticability brought on by Churchill. The common law obligation of mitigation is not the "provision of the term" of the

3

contract but rather a component part of the damages analysis after a breach of the contract. Likewise, the concept of mitigation is unaffected by the second clause which relates additionally to the compensation provision. The burden to mitigate is not abrogated by language which prohibits the modification or revocation of the term and compensation provisions. Mitigation is not tantamount or distantly related to a modification or revocation of the compensation provision. Churchill's argument is tautological, insofar as the disputed language speaks only to the exchange of promises that constitutes the basis of the contract but does nothing whatever to delimit the damages calculus occasioned by a breach of those promises. In order for the contract to achieve the extraordinary effect of deviating from the common law that Churchill desires, it simply would have had to use equally plain language in doing so. As it is, the Law Court has long looked upon any abrogation of the common law created by statute with disfavor unless the language used by the Legislature is explicit and clear showing that the abrogation was intended. The court cannot imagine that the Law Court would take a more lenient view with regard to private parties to a contract in their attempt to deviate from the common law unless the language was at least as explicit as that which it requires of the legislative branch.

The Court grants judgment in favor of Churchill as to Counts I and II and against Paragon in the amount of $865.38, which represents one week of lost wages ($45,000 / 52 = 865.38).[2]

Plaintiff's motion for summary judgment is DENIED.

Defendants' motion for summary judgment is GRANTED.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: June 29, 2017

Lance E. Walker, Justice
Maine Superior Court

---

[2] As for Count IV, the Court grants judgment in favor of Paragon and against Churchill. Churchill had no earned but unpaid wages as of the date of her termination. The statute, 26 M.R.S. § 626, clearly does not apply under these circumstances. Similarly, Churchill's argument regarding "estoppel" is not well developed but despite the distinction between promissory and equitable estoppel, neither applies to the summary judgment record before the court.

4