STATE OF MAINE                          SUPERIOR COURT
YORK, ss.                               CIVIL ACTION
                                        DOCKET NO. CV-17- ᕰ፭

DARREN JOHNSON,                    )
                                  )
            Plaintiff,            )
                                  )      **ORDER ON DEFENDANT'S MOTION**
      v.                          )        **FOR SUMMARY JUDGMENT**
                                  )
YORK HOSPITAL                     )
                                  )
            Defendant.            )

This case arises out of Plaintiff Darren Johnson's employment, and termination of

employment, by Defendant York Hospital. Pending before the Court is York Hospital's motion

for summary judgment on all counts of Johnson's complaint.

I.    **Background & Summary Judgment Factual Record**

Johnson brings a three-count complaint against York Hospital, alleging the circumstances

surrounding his termination constitute (1) hostile work environment, (2) whistleblower

retaliation, and (3) gender discrimination/disparate treatment.

Plaintiff worked as an MRI technician at York Hospital from August 2011 until July

2014. (D.S.M.F. ¶¶ 1, 61.) At all relevant times, Plaintiff was certified to perform both MRIs

and CAT scans. (P.S.M.F. ¶ 6.)

While Plaintiff was hired to work on a part-time basis and without an explicit promise of

full-time employment (D.S.M.F. ¶¶ 3-4; P.S.M.F. ¶ 7), he believed he would be given more

hours if the opportunity arose (P.S.M.F. ¶ 8). After learning that a full-time CAT scan position

opened in 2013, Plaintiff's supervisor, Teresa Cataldi, informed Mr. Johnson that he would be

kept in mind for the position. (P.S.M.F. ¶¶ 9-10; D.S.M.F. ¶ 6.) The position was never posted

1

and was filled the next day by a person with less experience than Plaintiff. (P.S.M.F. ¶¶ 11-13.) Plaintiff never applied for the CAT scan position. (D.S.M.F. ¶ 5.)

In June 2013 Plaintiff had an interaction with a co-worker, Nurse Lorinda Layton, while she was a patient, resulting in Ms. Layton reporting Plaintiff's conduct. (D.S.M.F. ¶¶ 16-17.) Plaintiff has denied allegations of wrongdoing regarding Ms. Layton's complaint. (P.S.M.F. ¶ 17.)

In February 2014, Plaintiff received a performance evaluation from Ms. Cataldi with which he did not agree. (D.S.M.F. ¶ 19; P.S.M.F. ¶ 18.) During that evaluation, Ms. Cataldi criticized Plaintiff's communication style and defensiveness, and encouraged him to develop a better relationship with his coworkers. (D.S.M.F. ¶¶ 19-20.) Ms. Cataldi further claims that Plaintiff yelled and was physically intimidating after she told him about patients' complaints, which Plaintiff denied. (D.S.M.F. ¶¶ 23, 25; P.S.M.F. ¶ 23.) Plaintiff did not note any objection to Ms. Cataldi's evaluation at the time, but he denies being defensive and unable to accept criticism. (D.S.M.F. ¶ 21; P.S.M.F. ¶ 21.) Plaintiff further recalls that his evaluation was rushed and that it ended with Ms. Cataldi comparing him to her ex-husband, whom she said she could not stand. (P.S.M.F. ¶¶ 20-21.) Ms. Cataldi disputes Plaintiff's recollection of her statements. (D.S.M.F. ¶ 24.) Plaintiff reported his recollection of Ms. Cataldi's statements to York Hospital's human resources department on May 30, 2014. (D.S.M.F. ¶ 33.)

On May 10, 2014, Plaintiff had an interaction with another coworker, Nurse Tina True, in front of a patient. (D.S.M.F. ¶ 36.) Dr. Terrance Farrell witnessed the incident and reports Plaintiff's response being rude, inappropriate, and aggressive to the point where Dr. Farrell felt the need to intervene. (D.S.M.F. ¶¶ 40-42.) Plaintiff denies Dr. Farrell's characterization of the

2

encounter, and claims that he overheard Ms. True express a desire to "smack" him in the head. (P.S.M.F. ¶¶ 25-28.)

On May 30, 2014, Plaintiff reported complaints he had regarding several coworkers, including Ms. True and Ms. Cataldi, to Matthew Bennett in York Hospital's human resources department. (D.S.M.F. ¶ 43.) After Mr. Bennett investigated Plaintiff's complaint and interviewed witnesses, human resources recommended Plaintiff be terminated. (D.S.M.F. ¶ 57.) Based on Mr. Bennett's investigation and a June 19, 2014 meeting with Plaintiff, Olivia Chayer, Defendant's Leader of Staff Experiences, recommended to York Hospital's President that Plaintiff be terminated. (D.S.M.F. ¶ 59.)

Defendant terminated Plaintiff's employment on July 5, 2014, after which Plaintiff filed a complaint with the Maine Human Rights Commission ("MHRC"). (D.S.M.F. ¶¶ 61, 67.) Notwithstanding his complaints of discrimination, Plaintiff would not have quit his job, did not feel a desire or compulsion to quit, and did not feel the conditions of his employment were intolerable. (D.S.M.F. ¶¶ 62-63, 65.) MHRC investigated Plaintiff's complaints of discrimination, and adopted its investigator's report determining there were no reasonable grounds for discrimination on October 24, 2016. (D.S.M.F. ¶¶ 69-70.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653; M.R. Civ. P. 56(c).

3

On a motion for summary judgment, the court takes all facts and inferences in favor of the non-moving party. *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629. "Summary judgment is appropriate when the record reveals no [genuine] issues of material fact in dispute." *Id.* "A fact is material if it has the potential to affect the outcome of the case." *Id.* "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "Summary judgment is appropriate . . . 'if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821.

"To withstand 'a motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action. If a plaintiff does not present sufficient evidence on the essential elements . . . the defendant is entitled to a summary judgment.'" *Watt UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The plaintiff's evidence "need not be persuasive at that stage, but the evidence must be sufficient to allow a factfinder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## B. Count I—Gender Discrimination/Hostile Work Environment

To prevail on a claim of sexual harassment based on a hostile work environment under 5 M.R.S. § 4572(1)(A), the plaintiff must prove:

(1) that she (or he) is a member of a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

4

*Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897 (quoting *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 (1st Cir. 2007). In evaluating a hostile work environment claim, "the trier of fact" must evaluate "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* ¶ 23 (quotation marks and citations omitted); *see also Blake v. State*, 2005 ME 32, ¶ 9, 868 A.2d 234 ("When analyzing a hostile work environment claim, the court must determine whether the environment was subjectively abusive to the employee, and, in addition, whether that environment was hostile or abusive pursuant to an objective standard.").

Plaintiff's hostile work environment claim is based on his allegations regarding two comments made by York Hospital employees: (1) Ms. Cataldi's statements during his February 2014 performance evaluation that Plaintiff reminded her of her ex-husband and that she could not stand Plaintiff, and (2) Ms. True's statements during the confrontation she had with Mr. Johnson in May 2014 in which she threatened to "smack" him. (Pl.'s Compl. ¶¶ 22-23.)

The only element of Plaintiff's claim the parties do not dispute is the first, both agreeing that Mr. Johnson's sex makes him a member of a protected class. While York Hospital challenges the sufficiency of evidence on each of the remaining five elements, the Court need only address the deficiency of record evidence with respect to the fourth element of the Plaintiff's claim.

Other courts have disposed of hostile work environment claims at the summary judgment stage based on insufficient evidence of severe or pervasive harassment. *See, e.g., Blake*, 2005 ME 32, ¶ 11, 868 A.2d 234 (affirming grant of summary judgment when factual record indicated "[t]here were no physical threats, and the incidents were not sufficiently repetitive or numerous

5

to rise to the level of objectively interfering with [plaintiff's] work performance."); *Bodman v. Maine*, 787 F. Supp. 2d 89, 106 (D. Me. 2011) (claim based on "a series of isolated incidents[], not physically threatening, and in no way interfered with Plaintiff's work performance" amounted to "proof of little more than 'offhand comments, and isolated incidents,'" such that "her hostile work environment claim [could] not survive summary judgment."); *Grubb v. Mercy Hosp.*, 2015 Me. Super. LEXIS 132, *11-*14 (June 22, 2002) (granting summary judgment to defendant on hostile work environment claim "almost entirely based on one incident in which a co-worker slapped [plaintiff's] buttock.") York Hospital notes that at least one other court determined a supervisor's comparison of a female employee to his ex-wife, in addition to myriad other comments, did not constitute sufficiently severe or pervasive harassment to survive summary judgment. *See Courtney v. N.C. DOT*, 2010 U.S. Dist. LEXIS 125548, *40, 2010 WL 4923344 (M.D.N.C. Nov. 29, 2010).

To prevail on a hostile work environment claim under Title VII of the Civil Rights Act[1] based on isolated incidents of harassment, such incidents must be "extreme" or "egregious," and the Supreme Court has cautioned that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 320 (1st Cir. 2014).

Viewing the evidence in the light most favorable to the Plaintiff, the Court cannot conclude that two comments, made months apart by different York Hospital employees, were

---

[1] The Law Court adopted the six-element framework for evaluating hostile work environment claims under the Maine Human Rights Act as those utilized by federal courts in Title VII cases. *See Watt*, 2009 ME 47, ¶ 22, 969 A.2d 987

6

sufficiently severe or pervasive such that any rational juror to conclude that Mr. Johnson faced an objectively abusive work environment.

### C. Count II—Whistleblower Retaliation

To prevail on a claim of retaliation under the Whistleblowers' Protection Act ("WPA"), 26 M.R.S. § 831 et seq., the plaintiff must prove (1) he "engaged in activity protected by the [Whistleblower's Protection Act,]" (2) he "experienced adverse employment action," and (3) "a causal connection exists between the protected activity and the adverse action." *Fuhrmann v. Staples The Office Superstore East, Inc.*, 2012 ME 135, ¶ 15, 58 A.3d 1083 (citing *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 12, 915 A.2d 400); 5 M.R.S. § 4572(1), (1)(A) (providing that "[i]t is unlawful employment discrimination . . . to discharge an employee" based on, *inter alia*, that employee's "previous actions that are protected under [the WPA.]").

Protected actions under the WPA include an employee's report, made in good faith "to the employer . . . orally or in writing, what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States" or "what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual." 26 M.R.S. § 833(1)(A), (B).

Plaintiff argues there is *prima facie* evidence that he satisfied the elements of whistleblower retaliation such that he should be permitted to present his case to the jury. He contends (1) he engaged in protected activity by reporting Teresa Cataldi and Tina True's allegedly inappropriate statements to Human Resources on May 30, 2014, (2) he experienced adverse employment action by being terminated on July 5, 2014, and (3) the temporal proximity between the report and the adverse action constitute a sufficient causal connection. He further

7

contends that, because he contests the Defendant's asserted bases for terminating his employment—threatening and inappropriate workplace behavior—there is a dispute of material fact as to the actual reasons why he was fired.

Defendant contends that, in the context of retaliation, "chronological proximity does not by itself establish causality, particularly if the larger picture undercuts any claim of causation[.]" *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003). While Johnson contends his co-workers' complaints against him are not true, that only serves as evidence that York Hospital's decision to terminate him was caused by the untrue accounts of several co-workers. It is not evidence that York's decision to fire Johnson was in any way caused by his initial complaint against Ms. Cataldi and Nurse True.

Mr. Johnson has not presented *prima facie* evidence of causation on his WPA claim besides the temporal proximity of his complaint to human resources and his ultimate termination, and therefore summary judgment to York Hospital on that count is warranted.

**D. Count III—Gender Discrimination/Disparate Treatment**

"It is unlawful employment discrimination . . . [f]or any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of . . . sex . . . or, because of th[at] reason[], to discharge an employee or discriminate with respect to hire . . . promotion, [or] transfer . . . ." 5 M.R.S. § 4572(1)(A).

Johnson contends York Hospital discriminated against him on the basis of his sex by (1) not hiring him for the CAT scan position he had expressed an interest in to Ms. Cataldi in 2013, and (2) firing him in July 2014.

**1. 2013 CAT Scan Position & Statute of Limitations**

8

Defendant first asserts that Plaintiff's claim is time-barred based on the time limits imposed under the Maine Human Rights Act, which provides:

> Any aggrieved person, or any employee of the commission, may file a complaint under oath with the commission stating the facts concerning the alleged discrimination, except that a complaint must be filed with the commission not more than 300 days after the alleged act of unlawful discrimination. . . .

5 M.R.S. § 4611. The parties do not dispute that Johnson did not file his complaint with the Maine Human Rights Commission until more than 300 days elapsed from the date on which he learned the position had been filled before he had the opportunity to apply for it.

Plaintiff argues the statute of limitations should be tolled under the "continuing violation doctrine." As the Law Court explained:

> The continuing violation doctrine arises from equitable concerns and is intended to toll applicable limitation periods until a reasonable person would have become aware of the facts supporting the claim of discrimination. Accordingly, a discriminatory act must have a degree of permanence, sufficient to put a reasonable claimant on notice of discrimination in order to begin the limitations period. Mere suspicion and rumor are insufficient to establish that the plaintiff knew or should have known of the discrimination.

*LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 11, 909 A.2d 629 (internal citations omitted).

The Law Court declined to apply the continuing violation doctrine in the case of a employee who alleged he was discriminated against when his employer denied his request for clearance to carry a firearm following a psychological examination. *Id.* ¶¶ 10-16. The court held that the statute of limitations ran from the date the plaintiff initially received notice that he was denied the clearance, despite the fact that the decision was not final and the employer reconsidered it, reasoning that the denial constituted "unambiguous and authoritative notice" of the allegedly discriminatory act. *Id.* ¶ 16.

Mr. Johnson had unambiguous and authoritative notice that the CAT scan position for which he had expressed an interest had been filled in 2013. There is no evidence in the record to

9

suggest that a reasonable person would not have become aware of the facts supporting this particular claim of discrimination until some later point. As such, Johnson's complaint of employment discrimination based on the filling of the CAT scan position in 2013 was not timely filed with the MHRC, 5 M.R.S. § 4611, nor was it timely filed with this Court, *id.* § 4613(2)(C). Accordingly, Johnson's claim for gender discrimination is time barred.

## 2. 2014 Termination

Defendant next contends Plaintiff has not established a *prima facie* case for sex discrimination based on his termination in July 2014.

"When a plaintiff lacks direct evidence that an employer's actions were motivated by discriminatory animus and relies instead on circumstantial evidence of discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), applies." *Doyle,* 2003 ME 61, ¶ 14, 824 A.2d 48. Under that framework, the plaintiff has the initial burden of establishing (1) he is a member of a protected class, (2) he is otherwise qualified for the position, (3) he faced adverse treatment from his "employer based in whole or in part on" his protected status. *See id.* After meeting this initial burden, the Defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* ¶ 15 (citation and quotation marks omitted). Then, "the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason is pretextual or irrelevant and that the unlawful discrimination brought about the adverse employment action." *Id.*

Viewing the evidence in the light most favorable to Mr. Johnson, there is nothing to indicate he was discriminated against on the basis of his sex. He is a man, he was evidently disliked by some of his female co-workers, Ms. Cataldi once compared him to her ex-husband, Nurse True expressed a desire to smack him in the head, and he was fired.

10

Even if these facts are sufficient to meet Johnson's initial burden, he has not sufficiently rebutted York Hospital's non-discriminatory reason provided for his termination, i.e., that he was fired based on reports from co-workers uncovered during the investigation of Johnson's complaint regarding Ms. Cataldi and Nurse True. While Johnson contests the underlying veracity of his co-workers' complaints, he does not, and cannot, rebut the fact that they were made. Finally, there is nothing to indicate York Hospital's citation to reports of Mr. Johnson's aggressive and unprofessional behavior were merely pretextual or otherwise irrelevant to its decision to terminate Johnson's employment there.

Therefore, Mr. Johnson has failed to put forth a *prima facie* case for sex discrimination with respect to the termination of his employment.

## III. Conclusion & Order

For the foregoing reasons, the Court concludes there is no *prima facie* evidence that supports Mr. Johnson's claims based on a hostile work environment, whistleblower retaliation, or sex discrimination.

Accordingly, the entry shall be:

"Defendant York Hospital's motion for summary judgment on all counts of Plaintiff Darren Johnson's complaint is GRANTED."

## SO ORDERED.

Dated: November 28, 2018

John O'Neil, Jr.
Justice, Superior Court

Entered on the Docket on: 11/28/18
Copies sent to the following parties/counsel on: 11/28/18
Attorney Churchill   Attorney Fraco
                     Attorney Heigelman

11