STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         Civil Action
                                                  Docket No. RE-17-078


NATIONSTAR MORTGAGE LLC,        )
                                )
        Plaintiff,              )
                                )
    v.                          )
                                )
PAMELA C. JONES,                )              DECISION AND ORDER ON
                                )              PLAINTIFF'S MOTION FOR
        Defendant/Third-Party   )              SUMMARY JUDGMENT
        Plaintiff,              )
    v.                          )
                                )
SHAPIRO & MORLEY, LLC,          )
                                )
        Third-Party Defendant.  )

Nationstar Mortgage LLC ("Nationstar") filed this foreclosure action against

Pamela Jones ("Jones") with respect to a residence located at 9 Brown Street in

Kennebunk, Maine ("Premises"). With her answer, Jones filed a five-count counterclaim

against Nationstar, seeking damages for wrongful use of civil proceedings (Count I);

abuse of process (Count II); breach of contract (Count III); violations of the federal and

Maine Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; 32 M.R.S.

§ 11001 *et seq.*, (Count IV); and violation of the Maine Consumer Credit Code ("MCCC"),

9-A M.R.S. § 1-101 *et seq.* (Count V).

Nationstar has moved for summary judgment pursuant to M.R. Civ. P. 56 on its

complaint for foreclosure as well as on each count of Jones's counterclaims. The motion

is denied as to Nationstar's foreclosure claim. The motion is granted in part and denied

in part with respect to the counterclaims.

1

# I. Summary Judgment Factual Record

On September 6, 2011, Jones entered into an agreement to purchase the Premises. (Plaintiff's Statement of Material Fact, hereinafter "PSMF," ¶ 1.)[1] The Premises are considered a "three-family property"; Jones intended to live in one unit and rent the remaining two. (PSMF ¶¶ 6-7.) Prior to closing, Jones had an opportunity to engage a home inspection company to inspect the Premises and to negotiate a reduction in purchase price based on defects discovered. (PSMF ¶¶ 2-3, as qualified by Defendant's Opposing Statement of Material Facts, hereinafter "DOSMF," ¶ 3; Defendant's Statement of Additional Material Facts, hereinafter "DSAMF," ¶ 16.)

On October 7, 2011, Jones executed a document certifying that she had inspected and was willing to close on the Premises in its present condition and that she agreed to hold the mortgagee, United Wholesale Mortgage ("UWM"), harmless for any structural defects in the Premises. (PSMF ¶ 4.) On the same day, Jones executed a second document entitled "Important Notice to Homebuyers" acknowledging that the Premises "are not HUD/FHA approved and HUD/FHA does not warrant the condition or the value" thereof and further cautioning Jones to inspect the Premises carefully. (PSMF ¶ 5.)[2]

To finance the purchase, Jones obtained a loan from UWM in the amount of $275,730, memorialized in a promissory note. (PSMF ¶ 7.) To secure the amount due on the note, Jones executed a mortgage dated October 7, 2011 designating Mortgage

---

[1] Jones's qualification is not adequately supported by record evidence, nor does it address the substance of Nationstar's factual averment. While Jones contends the record material supporting PSMF ¶ 1 does not contain the (allegedly false) disclosures that were "an integral part of the Agreement," she does not produce said disclosures in response. (See DOSMF ¶ 1 (citing Jones Aff. ¶ 63); DSAMF ¶ 15.)

[2] Jones's qualifications and objections to PSMF ¶¶ 4-5 do not address the substance of Nationstar's factual averments.

Electronic Registration Systems, Inc. ("MERS") as nominee for UWM, its successors, and assigns. (PSMF ¶ 10.) On October 11, 2011, the mortgage was recorded in the York County Registry of Deeds at Book 16179, Page 83. (PSMF ¶ 11.) UWM endorsed the note to Bank of America, N.A. ("BOA"), which further executed an endorsement in blank. (PSMF ¶ 9.)

BOA acted as loan servicer on the note from October 7, 2011 until June 5, 2013. (PSMF ¶ 15.) Nationstar has serviced the loan from June 5, 2013 forward. (PSMF ¶ 16.)

Jones claims that, at the time she purchased the Premises, there were serious structural, heating, plumbing, and other defects of which she was not aware and which rendered the Premises uninhabitable. (DSAMF ¶ 17.) Jones further claims that, in discussing her issues with an HUD counselor, the counselor advised Jones to stop making mortgage payments to the loan servicer, BOA, in order to have her issues addressed and resolved. (DSAMF ¶ 14.) Jones failed to make the monthly payment on the note due June 1, 2013 and has not made any monthly payments due thereafter. (PSMF ¶ 18.) Jones has not paid property taxes or insurance on the Premises since April of 2013. (PSMF ¶ 20.)

On July 26, 2013, Nationstar acquired possession of the note. (PSMF ¶ 19.)[3] On August 1, 2013, MERS assigned its interest as UWM's nominee to Nationstar. (PSMF ¶ 12.)[4]

Jones claims she reported alleged fraud by the appraiser and mortgage broker— presumably, their failure to disclose the alleged defects in the Premises. (DSAMF ¶ 29.)

---

[3] The record materials cited in support of Jones's denial of PSMF ¶ 19 do not undercut the veracity of the assertion.

[4] While Jones disputes the extent of the interest conveyed by the August 1, 2013 assignment (see POSMF ¶ 12), she does not dispute that such an assignment occurred.

3

Jones claims she "attempted to address and resolve the very serious problems and issues involving the physical condition of the Premises with Nationstar" but that she "did not receive any resistance or resolution of the issues." (DSAMF ¶ 56.)

Nationstar filed a complaint for foreclosure dated October 18, 2013. (DSAMF ¶ 50.) On December 22, 2013, Jones vacated the Premises. (PSMF ¶ 17.) In March 2014, Nationstar moved for summary judgment. The motion was denied on May 27, 2014. (See DSAMF ¶¶ 57, 59.) The parties stipulated to the voluntary dismissal of the foreclosure complaint pursuant to M.R. Civ. P. 41(a)(1)(ii) on December 5, 2014. (DSAMF ¶ 62.)

On April 22, 2016, UWM assigned to Nationstar its interest in the mortgage, which was recorded in the York County Registry of Deeds at Book 17234, Page 425, on May 16, 2016. (PSMF ¶ 13.) On October 19, 2016, Nationstar mailed a notice of default and right to cure, via first class mail, to Jones's last known address. (PSMF ¶ 23.)[5]

Nationstar commenced the present foreclosure action in January 2017. In response, Jones asserts that Nationstar failed to comply with various provisions of the HUD Handbook and various HUD regulations prior to commencing, and during the course of, the 2013 foreclosure action and the instant action. (See, e.g., DSAMF ¶¶ 30–31, 33-35, 39, 43, 45–46, 48, 52–54.)

As of February 28, 2019, Nationstar calculated the amounts due and owed to it under the terms of the note and mortgage, including costs and attorney fees, to be $381,065.13. (PSMF ¶ 25.) Jones disputes a number of the fees and charges that Nationstar seeks to recover in the current foreclosure action on various grounds,

---

[5] For reasons discussed in further detail below, Jones's denial and objection are overruled.

4

including lack of notice, insufficient detail, inconsistent evidence, and limitations imposed by HUD regulations. (DSAMF ¶¶ 32, 36–38, 40–48.)

## II. Standard of Review

Summary judgment will be granted when a review of the parties' statements of material facts and the record evidence to which they refer, considered in the light most favorable to the non-moving party, establishes that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Estate of Kay v. Estate of Wiggins*, 2016 ME 108, ¶ 9, 143 A.3d 1290. A material fact is one that can affect the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. The court reviews the evidence in the light most favorable to the non-moving party. *Estate of Kay*, 2016 ME 108, ¶ 9, 143 A.3d 1290.

When a plaintiff moves for summary judgment with respect to a claim in the complaint, the plaintiff has the burden to demonstrate that each element of its claim is established without dispute as to material fact based on the summary judgment record. *Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶¶ 11–12, 985 A.2d 508; *North Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 98, 984 A.2d 1278. Judgment as a matter of law is not warranted if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim." *Merriam v. Wanger*, 2000 ME 159, ¶ 7, 757 A.2d 778.

If a properly supported motion is filed, then the burden shifts to the non-moving party to demonstrate that a factual dispute exists sufficient to establish a *prima facie* case for each element of the claim or defense in order to avoid summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the non-

moving party is assessed for sufficiency—not persuasiveness—such that a court can make a factual determination without speculating. *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

### III. Discussion

#### A. Nationstar's Foreclosure Claim

To be entitled to summary judgment on a foreclosure claim, a mortgagee must establish that there are no disputed material facts for each of eight elements prescribed in *Chase Home Fin. LLC v. Higgins*[6] and that each element is "supported by evidence of a quality that could be admissible at trial." 2009 ME 136, ¶ 11, 985 A.2d 508 (citations omitted).

Here, two elements are disputed. Jones contends that the affidavit of Nationstar's corporate representative, Fay Janati, does not lay the requisite foundation for the admission of certain business records under M.R. Evid. 803(6). Her challenge is aimed

---

[6] The eight elements are:

(1) the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;
(2) properly presented proof of ownership of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage;
(3) a breach of condition in the mortgage;
(4) the amount due on the mortgage note, including any reasonable attorney fees and court costs;
(5) the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;
(6) evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;
(7) after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules;
(8) if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

*Id.* Jones also contends that Nationstar's foreclosure action fails because it does not own the note. In light of the disposition of the motion, the court does not need to address this argument.

6

at the sufficiency of the evidence adduced to establish (1) the "evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements" and (2) "the amount due on the mortgage note, including any reasonable attorney fees and court costs."

### 1. Notice of Default/Right to Cure

Exhibit E to the Janati Affidavit is a copy of the notice of default/right to cure sent to Brown, and includes a post office Certificate of Mailing dated October 19, 2016. "A post office department certificate of mailing to the mortgagor or cosigner is conclusive proof of receipt on the 3rd calendar day after mailing." 14 M.R.S. § 6111(3)(B). Nationstar has satisfied this element.

### 2. Amount Due

Part of Exhibit F to the Janati Affidavit summarizes the transaction history with respect to the note from January 1, 2011 to June 4, 2013, the time during which BOA serviced the loan. The summary of the amounts due on the note in Paragraph 14 of the Janati affidavit is based on her review of "the Business Records."

Janati is an employee of Nationstar, not BOA. "When a business integrates and relies upon the records of another business in that business's day-to-day operations, the presenting witness must have 'sufficient knowledge of *both businesses'* regular practices to demonstrate the reliability and trustworthiness of the information." *M&T Bank v. Plaisted*, 2018 ME 121, ¶¶ 22, 192 A.3d 601 (emphasis added). Admissibility of integrated business records under *Plaisted* hinges upon the affiant's ability to demonstrate foundational knowledge of particular facts.[7]

---

[7] Those facts are:

(1) the producer of the record at issue employed regular business practices for creating and maintaining the records that were sufficiently accepted by the receiving business to allow reliance on the records by the receiving business;

Standing alone, the Janati Affidavit does not establish sufficient personal knowledge of *both* servicers' regular practices. In an attempt to cure this deficiency and satisfy *Plaisted*, Nationstar submitted a supplemental affidavit of Nichole Renee Williams, a BOA records custodian, with its reply memorandum. Although the Williams Affidavit satisfies *Plaisted*'s foundational requirements, it was neither timely nor properly submitted. *See* M.R. Civ. P. 7(e) (permitting the motioning party to "file a reply memorandum, which shall be strictly confined to replying to new matter raised in the opposing memorandum."). Rule 7 narrowly confines the scope of a reply because the nonmoving party has no opportunity to respond under the rules.

Accordingly, for purposes of the summary judgment motion, the court disregards the Williams Affidavit and denies the motion for failing to establish the amount due on the note.

## B. Jones's Counterclaims[8]

### 1. Wrongful Use of Civil Proceedings

Jones claims that Nationstar's filing and prosecution of the 2013 foreclosure complaint constitutes a wrongful use of civil proceedings. To prevail on this claim, Jones

---

(2) the producer of the record at issue employed regular business practices for transmitting them to the receiving business;

(3) by manual or electronic processes, the receiving business integrated the records into its own records and maintained them through regular business processes;

(4) the record at issue was, in fact, among the receiving business's own records; and

(5) the receiving business relied on these records in its day-to-day operations.

*Id.* ¶ 23 (citations omitted).

[8] Jones did not seek leave of court to file an opposing memorandum in excess of twenty pages. *See* M.R. Civ. P. 7(f). Her arguments in support Counterclaims II-V are found on pages 21-29 of her memorandum. The court has enforced Rule 7's requirements in denying Nationstar's motion for summary judgment on the foreclosure claim. In a similar vein, the court does not consider Jones's memorandum after page 20, but nonetheless evaluates the merits of Nationstar's defenses in connection with therewith.

must prove: (1) Nationstar initiated, procured, or continued a civil proceeding without probable cause; (2) with a primary purpose other than that of securing the proper adjudication of the claim; and (3) the proceedings were terminated in plaintiff's favor. *Saunders v. Tisher*, 2006 ME 94, ¶ 29, 902 A.2d 830 (citations omitted). To survive summary judgment, Jones must make a *prima facie* showing as to each of the three elements.

A party has "probable cause" to maintain a civil action when there is "information sufficient to justify a person who is calm, and not governed by passion, prejudice, or lack of ordinary caution and care, in believing that there is a factual and legal basis for the action." *Saunders*, 2006 ME 94, ¶ 29, 902 A.2d 830 (citations omitted). The question of probable cause presents a mixed question of fact and law. *Price v. Patterson*, 606 A.2d 783, 785-786 (Me. 1992) (quoting *Humphries v. Parker*, 52 Me. 502, 504–505 (1864) (alteration omitted)).

It is undisputed that Jones failed to make any monthly payments due on her note starting on June 1, 2013, and Jones acknowledges that she defaulted on the note. (PSMF ¶¶ 18, 20; DSAMF ¶ 30.) While Nationstar ultimately lacked standing to bring the claim, this deficiency only became apparent after suit was filed in 2013 when in July 2014 the Law Court issued its decision in *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 17, 96 A.3d 700. Because Jones has failed to make a *prima facie* case at least as to the first element, summary judgment for Nationstar is proper on Count I of her counterclaim.

### 2. Abuse of Process

To prevail on this claim, Jones must prove that Nationstar: (1) initiated or used a court document or process in a manner not proper in the regular conduct of

9

proceedings, (2) with the existence of an ulterior motive, and (3) resulting in damage to plaintiff. *Tanguay v. Asen*, 1998 ME 277, ¶ 5, 722 A.2d 49.

The filing of a lawsuit, even if influenced by an ulterior motive, is not sufficient; rather, the claim must arise from misuse of legal procedures, "such as discovery, subpoenas, and attachment, after a lawsuit has been filed," or "the misuse of the procedures for obtaining a lien." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 23, 901 A.2d 189 (citations omitted).

The abuse of process claim here essentially is based on the filing of the 2013 action itself. Although Jones's counterclaim asserts that Nationstar submitted a "false" affidavit in support of its motion for summary judgment in that action, the undisputed record fails to support that allegation. The District Court's May 24, 2017 order denying the motion concluded that the affidavit in question did not sufficiently prove ownership or the amount due and failed to establish that the affiant was qualified to testify. (*See* DSAMF, ¶¶ 106, 107.) That is not tantamount to falsity. Summary judgment is warranted on Count II of the counterclaim as well.

### 3. Breach of Contract

Count III of the counterclaim asserts a breach of contract based on provisions in the mortgage and note that incorporate by reference HUD regulations. Jones claims Nationstar violated paragraph 8 of the mortgage ("Lender may collect fees and charges authorized by the Secretary"); paragraph 9(a) of the mortgage ("Lender may, except as limited by regulation issued by the [HUD] Secretary, in the case of payment defaults, require immediate payment in full of all sum secured by this Security Instrument"); as well as other HUD regulations that "provide procedures for borrowers to resolve issues," including procedures that may be prerequisite to filing suit. (Countercl. ¶¶ 42-44.)

10

The Law Court has not addressed the question of whether a mortgagor may assert a claim of breach of contract based on federal HUD regulations referenced in or incorporated into a mortgage. Courts that have considered this issue have arrived at different conclusions. *See Dan-Harry v. PNC Bank, N.A.,* 2017 U.S. Dist. LEXIS 218699, *12-13; *Miller v. Wells Fargo Bank,* 2017 WL 698520, *12-13. Some courts have declined outright to recognize contract claims or defenses that derive from incorporated HUD regulations. Other courts have held that incorporated regulations serve as a basis for asserting affirmative defenses in a foreclosure action. Still others have upheld affirmative breach of contract claims for damages based on incorporated HUD regulations. *See e.g., id.*

Despite this divergence, a substantial majority of courts fall into one of the latter two categories—that is, permit affirmative claims for damages or affirmative defenses to a foreclosure action based on HUD regulations incorporated into mortgages. *Dan-Harry,* at *16-21; *Miller,* at *12; *Mullins v. GMAC Mortg., LLC,* 2011 U.S. Dist. LEXIS 35210, * 8. The court rejects Nationstar's argument that incorporated HUD regulations provide no legal basis for Jones to assert a contract claim or defense, and reserves for decision at trial the precise nature of the right and whether there is a basis for any damages claimed.

The court also rejects Nationstar's argument that Jones is precluded from attempting to invoke these contract rights because she is in material breach by failing to make monthly payments from June 1, 2013 forward. Whether a material breach has occurred is generally considered a question of fact. *Jenkins, Inc. v. Walsh Bros., Inc.,* 2001 ME 98, ¶ 13, 776 A.2d 1229; *Associated Builders, Inc. v. Coggins,* 1999 ME 12, ¶ 6 n.1, 722 A.2d 1278. While it may seem obvious that a monthly mortgage payment obligation is a material term of the contract, it is illogical to conclude that Jones would

11

be unable to enforce contractual rights based on regulations that address Nationstar's pre-litigation obligations or the amount which it may claim in that litigation.

### 4. FDCPA Violations; Statute of Limitations

Count IV of the counterclaim asserts that Nationstar's conduct during the course of the 2013 foreclosure action constituted violations of the federal FDCPA and its state law analog. (Countercl. ¶¶ 50-61.) Both statutes establish a one-year limitation period for claims based on the alleged violations by debt collectors. 15 U.S.C. § 1692k(d); 32 M.R.S. § 11054(4). The prior foreclosure action was dismissed by agreement of the parties on December 5, 2014. Jones filed her counterclaims on May 26, 2017. This claim is time-barred.

### 5. Maine Consumer Credit Code Violations

Pursuant to the Maine Consumer Credit Code (MCCC), "[i]n attempting to collect an alleged debt arising from a consumer credit transaction, a person shall not . . . [c]laim, attempt or threaten to enforce a right that has been barred by law or a final order of the Supreme Judicial Court or a court of the United States." 9-A M.R.S. § 9-403(1)(G). Count V of the counterclaim alleges that Nationstar violated the MCCC because (i) the 2013 foreclosure action was barred by law and (ii) the "fees, cost, other amounts and accelerated amounts are not authorized by the regulations of the Secretary." (Countercl. ¶ 66.)

For the reasons discussed above, the 2013 foreclosure action was not "barred by law." With respect to the issues of fees and acceleration of the debt, there currently is no controlling Maine law on point. The status of the law with respect to the enforceability of HUD regulations via private contract is unsettled. *See* Section III(B)(3), *supra.* If Nationstar's conduct to collect fees or accelerated amounts is affirmatively barred by and violates HUD regulations, then the claim under section 403(1)(G) may lie.

12

Since this remains a disputed issue, summary judgment on Count V of Jones's counterclaim is denied.

### IV. Order

Accordingly, it is hereby ordered and the entry shall be: "Plaintiff Nationstar Mortgage LLC's motion for summary judgment is DENIED as to its complaint for foreclosure and as to Counts III and V of Defendant Pamela C. Jones's counterclaims; and is GRANTED as to Counts I, II, and IV of Defendant Pamela C. Jones's counterclaims.

The clerk may enter this Order on Plaintiff's Motion for Summary Judgment on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: January 21, 2020

_____
Wayne Douglas
Justice, Superior Court

ENTERED ON THE DOCKET ON: 1/21/2020

13

NATIONSTAR MORTGAGE LLC,        )
                                )
          Plaintiff,            )
                                )
     v.                         )
                                )
PAMELA C. JONES,                )          DECISION AND ORDER ON
                                )          THIRD-PARTY DEFENDANT'S
          Defendant/Third-Party )        MOTION FOR SUMMARY JUDGMENT
          Plaintiff,            )
     v.                         )
                                )
SHAPIRO & MORLEY, LLC,          )
                                )
          Third-Party Defendant.)

Before the court is a motion for summary judgment by Shapiro & Morley, LLC

("S&M") on all counts asserted by Pamela C. Jones in her third-party complaint. For

the reasons set forth below, the motion for summary judgment is granted.

## I. Summary Judgment Factual Record

The factual record on a motion for summary judgment consists of statements of

material fact which, when supported by record citations, are either admitted or deemed

admitted when not properly controverted by an opposing statement of facts. M.R. Civ.

P. 56(h); *Cach, LLC. v. Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015. The requirements of Rule

56(h) must be strictly followed in order "to ensure that the [summary judgment] process

is both predictable and just." *Cach, LLC.*, 2011 ME 70, ¶ 12, 21 A.3d 1015.

S&M's statement of material facts consists of fifty-nine enumerated paragraphs,

twenty-nine of which Jones expressly admits. Many of the remaining paragraphs,

however, are deemed admitted because they were not properly controverted. M.R. Civ.

P. 56(h)(2), (4). Facts are not properly controverted when, for example, the opposing

statement of facts fails to include a supporting record citation or states an objection

1

without first designating whether the opposed fact is "admitted", "denied", or "qualified". *See id.; Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169 (deciding that opposing statement of material facts must explicitly admit to facts by reference to each numbered paragraph or deny or qualify each statement by adducing to part of the record); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653 (finding that each statement of fact must include reference to record evidence that would be admissible at trial and that "the absence of supporting record references . . . is fatal to the motion"); *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 11, 824 A.2d 48 (holding that an opposing statement cannot state or commingle new facts and that they will be disregarded unless stated separately).

The court also discounts Jones's additional statement of material facts because many of the facts stated are not relevant to the claims against S&M, reflect conclusions of law, and/or are based on assertions in Jones's affidavit that are likely inadmissible. *See Levine*, 2001 ME 77, ¶ 9, 770 A.2d 653 (holding that supporting record evidence must be admissible at trial); *Platz Assoc. v. Finley*, 2009 ME 55, ¶ 16, 973 A.2d 743 (finding that each statement must include a reference to facts in the record of the quality that would be admissible at trial, including any statement under oath, such as affidavits). Moreover, its ninety-four paragraphs do not represent the "short and concise" statement required under M.R. Civ. P. 56(h)(2). *See Stanley*, 2004 ME 157, ¶ 29, 864 A.2d 169.

For these reasons, the summary judgment record of undisputed material facts for purposes of adjudicating this motion is as follows.

S&M is a law firm that specializes in legal services related to real estate transactions, including foreclosure actions. (Defendant's Statement of Material Facts, hereinafter "DSMF," ¶ 1.) On or about July 22, 2016, Nationstar Mortgage, LLC retained

S&M to file a foreclosure action regarding property owned by Pamela Jones located at 9 Brown Street, Kennebunk, Maine. (DSMF ¶¶ 2, 3.) Nationstar furnished to S&M documents relevant to the foreclosure complaint, including the promissory note, mortgage, assignments, payoff amount, and past due amounts. (DSMF ¶ 4.)

The note was executed by Jones and delivered to United Wholesale Mortgage ("UWM"). UWM executed an endorsement to Bank of America, N.A., which executed an endorsement in blank. (DSMF ¶¶ 5, 6.) At all times relevant to Jones's claims, S&M was in possession of the original note on behalf of Nationstar. (DSMF ¶ 7.)

The mortgage instrument, also in S&M's possession, was executed by Jones and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for UWM, its successors and assigns, on October 11, 2011, as recorded in the York County Registry of Deeds ("YCRD") Book 16179, Page 83. (DSMF ¶ 8.) S&M also had in its possession copies of assignments indicating that the mortgage had been assigned from UWM, its successors and assigns, to Nationstar, as recorded in the YCRD on August 2, 2013 and May 16, 2016 in Book 16664, Page 773 and Book 17234, Page 425, respectively. (DSMF ¶ 9.)

The note and mortgage include default provisions in the event of nonpayment. (DSMF ¶ 10.) Nationstar informed S&M that Jones was in default for failure to make payment as of June 1, 2013. (DSMF ¶ 11.) Jones testified in her deposition that she has not made payments on either the note or mortgage since 2013. (DSMF ¶ 12.) Nationstar provided S&M with the past due and payment amounts Nationstar claimed Jones owed pursuant to the note and mortgage. (DSMF ¶ 13.)

3

Based on information contain in its file, S&M sent a "debt validation letter"[1] to her 45 Portland Road in Kennebunk, Maine address on July 26, 2016. The letter stated the amount of the alleged debt, listed Nationstar as the creditor to whom the debt was owed, and named the original creditor, UWM. (DSMF ¶ 15.) It further stated:

> UNLESS YOU NOTIFY US THAT YOU DISPUTE ANY PORTION OF THIS DEBT WITHIN 30 DAYS AFTER RECEIPT OF THE NOTICE, THE DEBT WILL BE ASSUMED VALID.

(DSMF ¶ 16.) Jones testified that she received the letter, understood that it afforded her 30 days to dispute the debt, and forwarded it to one of her attorneys, Mark Kearns. (DSMF ¶ 17.) Jones also testified that she did not herself contact S&M or Nationstar in response to the letter and that she did not know whether her attorneys contacted S&M or Nationstar on her behalf. (DSMF ¶¶ 19, 20.) S&M did not receive a response from Jones or her attorneys. (DSMF ¶ 21.) S&M believed the debt to be valid and that Nationstar was entitled to foreclose on account of Jones's default. (DSMF ¶ 22.)

On or about October 20, 2016, Nationstar provided S&M with copies of an October 19, 2016 notice of default/right to cure letter addressed to Jones at both her 45 Portland Road and 9 Brown Street addresses in Kennebunk, Maine, as well as the associated U. S. Postal Service certificates of mailing. (DSMF ¶ 23.) Jones claims that she never received the October 19, 2016 letter. (Plaintiff's Additional Statement of

---

[1] A "debt validation letter" is a written communication sent to a debtor containing, among other things, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(c) (2018). Jones contends that because the letter sent by S&M did not abide verbatim by the language in the statute, it does not qualify as a "debt collection letter" as a matter of law. Jones's Opp. Br. at 7. In particular, Jones notes that the letter sent by S&M excludes the phrase "by the debt collector" after the words "will be assumed valid." *Id.* at 8. Nothing in the statute indicates that the phrasing of the statement must perfectly track the instruction. There are no quotation marks setting apart mandatory words or phrases or a command by Congress to include specific language. Instead, the statute provides an instruction for the information—not the exact verbiage—that must be included. Therefore, the letter sent by S&M to Jones on July 26, 2016 is considered to be a "debt validation letter" that triggered a thirty-day period during which Jones needed to respond in order to contest the amount owed.

4

Material Facts, hereinafter "PASMF," ¶ 26.) Jones contacted Nationstar on several occasions from 2013 to 2015 to tell Nationstar that she lived at 20 Agatha James Drive, Kennebunk, Maine. (PASMF ¶ 28.) On November 12, 2016, Jones's attorneys, Mark Kearns and Mark Randall, notified S&M that they represented Jones and requested that further communications with Jones be made through them. (DSMF ¶ 24; PASMF ¶ 34.)

On or about January 30, 2017, S&M prepared and filed on behalf of Nationstar the complaint for foreclosure in the above-captioned matter. (DSMF ¶ 25.) On or about February 2, 2017, Jillian Boyer, a non-attorney employee at S&M, contacted the offices of Kearns and Randall to request that they accept service of process on Jones's behalf; Kearns and Randall told Boyer that they did not have the authority to accept service and that Jones would need to be served personally. (DSMF ¶¶ 26, 27.) Based on this exchange with Kearns and Randall, Boyer believed they no longer represented Jones. (DSMF ¶ 28.)

S&M had hired Boyer on June 27, 2016 as an assistant within the process service department. Her job functions included completing service of process by identifying and locating debtors and forwarding copies of relevant documents to process servers for service on debtors. (DSMF ¶ 50.) As S&M requires of all employees in her position, Boyer completed a four-day training program on federal and state laws and regulations relevant to her work. The training focused specifically on requirements of the Fair Debt Collection Practices Act ("FDCPA"), including the statute's communication guidelines (15 U.S.C. § 1692c) instructing that a "debtor collector cannot contact a consumer known to be represented by an attorney," and on S&M's internal and external communication policies that affirm the federal rule. (DSMF ¶¶ 51, 52, 53, 54, 55.)

5

Boyer completed the FDCPA and communication training again on April 26, 2017, satisfying the firm's requirement that all employees in her position repeat the training on an annual basis. (DSMF ¶¶ 58, 59.)

Based on her training, Boyer understood that she was not supposed to communicate directly with a debtor whom she knew to be represented by counsel. (DSMF ¶ 56.) Violation of these S&M policies is grounds for disciplinary action, including termination of employment. (DSMF ¶ 57.)

After Boyer's conversation with Kearns and Randall's office, S&M forwarded the summons and complaint to the York County Sherriff's Office with instructions to serve Jones in person—first, on or about February 2, 2017, at her 45 Portland Road address and then, on or about February 9, 2017, at the 9 Brown Street address. (DSMF ¶¶ 29, 31.) A deputy sheriff later notified S&M that service could not be made at either 45 Portland Road (because it was a commercial property) or 9 Brown Street (because it appeared to be vacant). (DSMF ¶¶ 30, 32.)

On February 22, 2017, Boyer called Jones for the first time to ask for an address at which she could be served, leaving a voicemail message after no one answered. (DSMF ¶¶ 33, 34; PASMF ¶¶ 35, 36, 38.) Jones indicates that Boyer stated the following in her voicemail:

> Hi. My name is Joanne and I'm calling from the law offices of Shapiro & Morley. I am looking to speak with Pamela Jones. If you can give me a call back, my number is [ ], my extension is [ ], thanks.

(DSMF ¶ 34.) Boyer did not ask for an address at which to serve Jones. (PASMF ¶ 36.) Neither Jones nor her attorneys responded to Boyer's voicemail. (DSMF ¶ 35.) On or about March 3, 2017, S&M forwarded the summons and complaint to Accel Process Service, a third-party service processor, to serve Jones in Spring Brook, Pennsylvania. (DSMF ¶ 36.) On or about March 27, 2017, S&M received an affidavit from the process

server indicating that multiple attempts at service had been unsuccessful and that William Jones, who identified himself as Jones's ex-husband, stated that she resided in Maine. (DSMF ¶ 37.)

On April 13, 2017, Boyer called Jones a second time. (DSMF ¶ 38; PASMF ¶ 40.) Jones answered, and the two spoke for six minutes. (DSMF ¶ 39.) Jones testified that Boyer's tone was "businesslike" and that she "sounded concerned that [Jones] didn't have attorneys" and "didn't know who to contact." (DSMF ¶ 40.) Boyer told Jones she was calling with respect to service of foreclosure papers; she had previously contacted Kearns and Randall, who informed Boyer that they did not have the authority to accept service of process; and she (Boyer) believed that Kearns and Randall no longer represented Jones. (DSMF ¶¶ 41, 42.) It was Jones's understanding that Boyer contacted her to find out where she resided so S&M could serve her with the summons and complaint. (DSMF ¶ 41.)

Jones told Boyer that she was represented by Kearns and Randall and asked who at their office told Boyer that they did not have the authority to accept service of process. (DSMF ¶ 43.) After the phone call concluded, Boyer reported the conversation to Attorney William Jordan, a partner at S&M, who immediately called Kearns and Randall to clear up any confusion regarding their representation of Jones. (DSMF ¶ 44.) Jordan left a voicemail message for Kearns. (DSMF ¶ 45.) Kearns emailed Jordan to notify him that he and Randall continued to represent Jones; that Boyer's contacts with Jones regarding service of the complaint—the February 22, 2017 voicemail and the April 13, 2017 phone call—were illegal; that Kearns and Randall "inten[ded] to pursue [Jones's] rights and damages to the fullest extent of the law"; that S&M should only communicate with Kearns and Randall by email or "snail mail"; that they now possessed the authority to accept service of process on behalf of Jones; and that they "intend[ed] to file a

7

crossclaim against the Law Offices of Shapiro & Morley, LLC and the person who called her concerning the violations of the U.S. and Maine Fair Debt Collections Practices Act." (DSMF ¶¶ 45, 46.)

That afternoon, Attorney Len Morley, managing partner at S&M, responded to Attorney Kearns's email, apologizing for S&M's mistaken belief that Kearns and Randall did not represent Jones—a mistake that stemmed from the statement by someone at Kearns and Randall's office that they were not authorized to accept service of process.[2] (DSMF ¶ 41.)

On the same day, Jordan held a meeting with S&M employees who handle service of process, including their supervisor, to reinforce their training on the firm's communication policies regarding debtors represented by counsel and the distinction between a lawyer's lack of authority to accept service on the debtor's behalf and the attorney no longer representing the debtor. (DSMF ¶ 48.) In the wake of these events, S&M adopted as a firm policy a requirement that all employees confirm in writing whether or not an attorney who indicates a lack of authority to accept service continues to represent the debtor. (DSMF ¶ 49.)

---

[2] The email stated:

> Mark, please accept our apology to you and Ms. Jones. We fully appreciate and understand your concerns, and agree that communicating directly with Ms. Jones was not appropriate. We were aware of your representation for that reason contacted your office concerning acceptance of service. Our notes reflect that your office indicated that it was not authorized to accept service, and unfortunately that was erroneously interpreted by our employee as not continuing to represent Ms. Jones. While we believe the mistake was made in good faith, we agree completely that any questions regarding your continued representation should have been directed at you, not your client. We have undertaking [sic] re-retraining of the affected individual and additional staff who may have reason to communicate with borrowers. We feel terrible if Ms. Jones was upset by the contact, and hope you will pass along our regret. If there is something we can do to correct our error, I hope you will let me know.

*Id.*

8

## II. Standard of Review

Summary judgment is warranted when a review of the parties' statements of material facts and the record evidence to which they refer, considered in the light most favorable to the non-moving party, establishes that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Estate of Kay v. Estate of Wiggins*, 2016 ME 108, ¶ 9, 143 A.3d 1290. A material fact is one that can affect the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. The court reviews the evidence in the light most favorable to the non-moving party. *Estate of Kay*, 2016 ME 108, ¶ 9, 143 A.3d 1290.

A defendant (or here, a counterclaim-defendant) moving for summary judgment bears the burden of establishing, on the basis of facts not subject to genuine dispute, that it is entitled to judgment as a matter of law. *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021. However, judgment as a matter of law is not warranted if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim" *Merriam v. Wanger*, 2000 ME 159, ¶ 7, 757 A.2d 778. When material facts are contested, the dispute must be resolved through fact-finding at trial—"even if the likelihood of success at trial by one party or another is small." *Rose v. Parsons*, 2014 ME 73, ¶ 4, 118 A.3d 220; *see Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

If a properly supported motion is filed, then the burden shifts to the non-moving party to demonstrate that a factual dispute exists sufficient to establish a *prima facie* case for *each* element of the claim or defense in order to avoid summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the non-

moving party is assessed for sufficiency—not persuasiveness—such that a court can make a factual determination without speculating. *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

Jones's third-party complaint seeks an award of damages for alleged violations of the federal FDCPA and its state analog, the Maine Fair Debt Collection Practices Act ("MFDCPA").[3] Specifically, Jones alleges that S&M violated 15 U.S.C. § 1692c, which regulates communications in connection with debt collection (Count I); 15 U.S.C § 1692d, which prohibits a debt collector from engaging in harassing or abusive conduct towards a debtor (Count II);[4] 15 U.S.C. § 1962e, which forbids a debt collector from making false or misleading representations (Count III); and (4) 15 U.S.C. § 1692f, which bars "unfair practices" in debt collection (Count IV).

## A. Counterclaim Count I: Debt Collector Communications—15 U.S.C. § 1692c

Section 1692c(a)(2) prohibits a "debt collector," a definition inclusive of a law firm that regularly tries to collect consumer debt through litigation, from communicating with a consumer regarding the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt." *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding that a law firm regularly participating in litigation to collect debt qualifies as a "debt collector" for purposes of the FDCPA). Jones alleges that Boyer's phone calls on February 22, 2017 (when she left a voicemail) and

---

[3] The parties agree that for the sake of the third-party complaint by Jones against S&M the federal and state statutes are coextensive.

[4] In her opposition to the motion, Jones adds for the first time an allegation that S&M violated the statute when its employee left a voicemail on Jones's phone that did not include "meaningful disclosures of the caller's identity." Jones's Opp. Br. at 3. Since she has not previously stated this particular claim, raising it in this context amounts to an attempt to functionally amend the complaint and therefore the court declines to address it.

April 13, 2017 (when she and Jones talked for six minutes) violated Section 1692c(a)(2) because S&M, Boyer's employer, was on notice that Kearns and Randall represented Jones in her litigation with Nationstar.

S&M does not dispute that Attorneys Kearns and Randall represented Jones, or that its staff knew or should have known of their representation. S&M does not deny that Boyer, its employee, made these calls to Jones or that these calls facially violate 15 U.S.C. § 1692c. S&M contends, however, that its conduct is covered by the "bona fide error" defense set forth in 15 U.S.C. § 1692k(c), which provides:

> A debt collector may not be held liable in any action brought under this Title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

15 U.S.C. § 1692k(c).

Neither the FDCPA, the Law Court, nor the First Circuit Court of Appeals has defined the meaning of the terms "intentional" or "bona fide error" as used in section 1692k(c).[5] Nor have they indicated what procedures qualify as "reasonably adapted" thereunder. S&M argues that this court should follow the 10th Circuit's lead in classifying a debt collector's actions as "intentional" only when it acts with "specific intent to violate the FDCPA." *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006) (noting that "the case law is somewhat unsettled as to what makes a violation

---

[5] Judge Singal of the United States District Court for the District of Maine has adopted an approach to defining "intentional" by examining the degree to which the debt collector reasonably relied on information provided to it. *See Poulin v. The Thomas Agency*, 760 F.Supp.2d 151, 162 n. 12 (Me. D. 2011) ("Defendant has established sufficient evidence that any violation was not intentional as its reliance on [its client's] representations regarding the status of the debt was reasonable."). This approach, however, appears to conflate "intentional" and a "bona fide error," which occurs, at least according to one federal district court, when a debt collector makes a mistake "in good faith; a genuine mistake, as opposed to a contrived mistake." *Torres v. LVNV Funding, LLC*, No. 16-6665, 2018 U.S. Dist. LEXIS 49885, at *22 (N.D. Ill. Mar. 27 2018).

intentional"). In the circumstances presented here, the specific intent approach in *Johnson v. Riddle* seems to be the most sensible construction.[6]

The record is undisputed that the error in question was an error of fact—i.e., Boyer mistakenly believed that Jones was no longer represented by counsel and contacted her directly in order to secure service of process after other attempts had failed. The record does not establish that Boyer acted intentionally in the sense that she knew she was violating the FDCPA or that she was ignorant of the statute's requirements. Rather, the record supports the conclusion that she acted upon a mistaken understanding of the statement made by someone in Kearns's and Randall's office that neither attorney would accept service of process on Jones. By that point, Boyer already had made several attempts to serve Jones. As soon as she realized her mistake, she notified her supervisors. Nothing in the record establishes that Boyer sought to gain improper advantage by contacting Jones. She reached out only as a last resort and based on a misunderstanding that followed from her communications with staff at the office of Jones's attorneys. Boyer's conduct on behalf of S&M satisfies the first prong of the bona fide error defense.

The undisputed facts also establish that S&M maintains procedures reasonably adapted to avoid such an error. Firm employees, including Boyer, are trained in the requirements of the FDCPA. The training includes modules that specifically address section 1692c(a)(2) and the firm's communication policies. One lesson instructs

---

[6] Contrary to Jones's argument, it does not appear that the 2010 U. S. Supreme Court decision in *Jerman v. Carlisle*, 559 U.S. 573, 584 (2010), establishes a broad, "strict liability" standard that dictates the outcome in this case. The issue in *Carlisle* involved an *error of law* by a debt collector, *not* an error of fact, as is the case here. *Carlisle*, 559 U.S. at 576-77. *Carlisle* was very clear about that distinction in limiting its broad holding to cover errors of law only; and actually did not reach the merits of Jerman's claim—i.e., whether language in a "debt validation letter" indicating the debtor needed to contest the amount owed "in writing" constituted a violation of the FDCPA.

12

employees not to contact debtors represented by counsel. Retraining on the FDCPA and the firm's communication protocols is conducted on an annual basis. As a result of this incident, employees are now required to receive confirmation in writing that a debtor is no longer represented by a firm before contacting a debtor directly. These policies and procedures are "reasonably adapted" to minimize the chance of errors like the mistake committed by Boyer.

## B. Counterclaim Count II: Debt Collector Harassment—15 U.S.C § 1692d

Count II alleges that S&M violated section 1692d[7] of the FDCPA by filing a complaint for foreclosure on behalf of its client, Nationstar, without first investigating the merits of Nationstar's case.

The summary judgment record establishes that Nationstar provided standard paperwork to S&M necessary to initiate the foreclosure action, including the note, mortgage instrument, associated documents, and records setting forth past due amounts Nationstar claimed Jones owed. S&M relied on that information in sending Jones a "debt verification letter" and filing the foreclosure complaint.

A law firm acting as a debt collector can rely on the representations made to it by its client without investigating further. *See Poulin v. The Thomas Agency*, 760 F.Supp.2d at 160 (recognizing that the "overwhelming weight of authority" establishes "that the FDCPA does not require a debt collector to independently investigate the merit of the debt and that a debt collector can rely on its clients' representations regarding the validity of the debt."); *Shapiro v. Haenn*, 222 F.Supp.2d 29, 44 (Me. D. 2002) ("[D]ebt collectors may rely on the information their clients provide, and the FDCPA does not

---

[7] Section 1692d prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

require them to conduct their own investigation into the amount or validity of the underlying loan.")[8]

## C. Counterclaim Count III: False/Misleading Representations—15 U.S.C § 1692e

Jones contends S&M violated section 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," because it (1) did not investigate the "false claims" in its complaint and (2) omitted the phrase "by the debt collector" from the debt verification letter. 15 U.S.C. § 1692e. The former argument has been addressed and rejected above. *See also Poulin* 760 F. Supp.2d at 159-60 (holding that debt collector may rely upon and has limited obligation to investigate information supplied by creditor).

As to the latter argument, section 1692g(a)(3) requires that a debt verification letter include "a statement that unless the consumer within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." As discussed above at footnote 2, the plain reading of the statute does not suggest an intent to require a literal, verbatim recitation of the language used in that subsection, which Congress easily could have done by stating so expressly or by use of quotation marks around the target language. Jones's reliance on *Carlisle* to support this interpretation of the statute is misplaced because, as also noted above in footnote 7, *Carlisle* involved a distinctly different factual context and did not adjudicate the merits of the issue before the Supreme Court. Jones cites

---

[8] Jones reliance on *McLaughlin v. Phelan Hallian & Schmieg, LLP*, 756 F.3d 240, 247 (3d. Cir. 2015) to support her harassment claim is unpersuasive. *McLaughlin* simply reversed a Rule 12(b)(6) dismissal of a debtor's claim that a debt verification letter was misleading because it did not accurately state the amount of the debt due on a particular date. The Court did not decide as a matter of law that the law firm violated the FDCPA by not conducting an independent investigation of the amount owed.

14

no other persuasive authority interpreting the statute to mandate the use of the exact language in subsection c. Moreover, it does not follow as a matter of common language or logic that a letter sent by or on behalf of a creditor is rendered misleading because the words "by the debt collector" did not follow the phrase "assumed to be valid."

**D. Counterclaim Count IV: Unfair Practices—15 U.S.C § 1692f**

Finally, Jones contends S&M violated § 1692f of the FDCPA by attempting to collect an amount "not expressly authorized by the Mortgage" because HUD regulations do not authorize collection of accelerated amounts. Pl.'s Compl. ¶ 18. Section 1692 provides in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).

S&M relied on the information furnished by its client, Nationstar. Courts examining this type of claim have held that a debt collector does not have an independent obligation to fact-check the information in detail but rather only to verify "the amount being demanded is what the creditor is claiming is owed." *Poulin*, 760 F.Supp.2d at 159-60,162 (quoting *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173-74 9th Cir. 2006)). Summary judgment is warranted on this claim as well.

**IV. Order**

Accordingly, for the reasons set out above it is hereby ordered and the entry shall be: "Third-Party Defendant Shapiro & Morley, LLC's motion for summary judgment is GRANTED."

15

The clerk may enter this Decision and Order on Third-Party Defendant's Motion for Summary Judgment on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: January 21, 2020

_____
Wayne Douglas
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 1/21/2020

16